SALLY PETERS HOLMES, Appellant, v. UNDERWOOD & UNDERWOOD, INC., Respondent.

First Department, March 1, 1929.

*Clarence A. Appleton* of counsel [*Abberley, Bryde & Appleton*, attorneys], for the appellant.

*Joseph F. Curren* of counsel [*Lee, Donnelly & Curren*, attorneys], for the respondent.

O'MALLEY, J. The complaint dismissed by the order appealed from contains two alleged causes of action. The first alleges that

the defendant, engaged in the business of taking and making photographs for hire, was employed to take pictures of guests at a social function held in the plaintiff's home and was paid its agreed price or charge therefor; that two photographs were taken of the plaintiff; that at such time an agreement was made between plaintiff, her husband and defendant that the plaintiff, if she should so wish, might purchase any of such photographs; that the said photographs and all plates, films, proofs or negatives thereof and all rights to dispose of the same were and continued to be the plaintiff's personal property.

It is further pleaded that the defendant, in violation of plaintiff's rights and without her consent either written or oral, sold the proof or negative to a newspaper of large circulation in the borough of Manhattan, city of New York, which thereafter published the same in connection with a false, scandalous and defamatory news article concerning the plaintiff, portions of which article were copied by other newspapers circulating throughout the United States, all to the plaintiff's damage. Plaintiff also alleges that she has duly performed all of the terms and conditions of said contract with the defendant on her part to be performed.

The allegations of the second cause of action are to the effect that the defendant, without having first obtained plaintiff's written consent, knowingly used a picture of plaintiff for the purposes of trade, in that it sold said picture to a newspaper for publication which was published by said newspaper in connection with a false, scandalous and defamatory news article of and concerning the plaintiff. It is also pleaded that defendant sold said picture with the knowledge that it was to be published in said newspaper. Damages in the sum of $50,000 are demanded.

We are of the opinion that the complaint states two good causes of action, the first *ex contractu,* and the second based on sections 50 and 51 of the Civil Rights Law. We are confronted with a question of pleading merely and may not advert to or consider facts existing or assumed, but not expressly pleaded or inferable by fair intendment. What the evidence may or may not disclose is immaterial at this stage of the action.

The ordinary contract between a photographer and his customers is a contract of employment. " The conception as well as the production of the photograph is work done for the customers and they, not their employee, are the exclusive owners of all proprietary rights." (*White Studio, Inc.,* v. *Dreyfoos,* 156 App. Div. 762, 763, and cases there cited.) The fact that it is not expressly alleged that the monetary consideration received by the defendant came from the plaintiff does not establish any exception to the gen-

eral rule. It still remains that defendant has " no right to sell and dispose of reproductions from its negative without the consent of its sitter." (*White Studio, Inc.*, v. *Dreyfoos, supra*, 764.) Moreover, plaintiff furnished consideration in offering to and actually sitting for the photograph. Having sold or disposed of the proof or negative, the defendant has, on the face of the complaint, breached its contract of employment.

The restricted rights of a photographer are emphasized by the provisions of section 51 of the Civil Rights Law (as amd. by Laws of 1921, chap. 501). He must, after notice of objection thereto by the person portrayed, desist from even exhibiting a photograph in his own establishment. The right to object being given to the person portrayed, further force is lent to the conclusion that a contract exists between the sitter and the photographer, irrespective of whether or not the sitter furnishes any monetary consideration. The first cause of action is, therefore, valid.

The second cause is attacked on the ground that there has been pleaded no use for advertising purposes or for purposes of trade. The contention is unsound. It is not the publishing of plaintiff's photograph that is at this stage so much material. Rather, it is the sale of such photograph by defendant. That was in furtherance of defendant's trade. It has commercialized the photograph, the rights to which are in the plaintiff. The newspaper is not here sought to be held liable.

While the general allegations were broader in *Kunz* v. *Bosselman* (131 App. Div. 288) the case is quite similar to the one under consideration. In the cited case the complaint alleged that the defendant, engaged in the business of publishing and selling portraits and photographs, had used, circulated and offered for sale, and for the purposes of trade, the portrait and picture of plaintiff. The complaint was sustained. What was there said may well be repeated here: " While perhaps more scientific care ought to have been exercised in drawing this complaint, it states, nevertheless, a cause of action under the statute, * * *." (P. 291.)

It follows that the judgment and order appealed from should be reversed, with costs to the appellant, and the motion denied, with ten dollars costs, with leave to the defendant to answer within ten days from service of the judgment to be entered hereon upon payment of said costs.

DOWLING, P. J., FINCH and PROSKAUER, JJ., concur; MERRELL, J., dissents.

MERRELL, J. (dissenting). I am unable to agree with my associates in upholding the sufficiency of plaintiff's complaint. In her first

alleged cause of action plaintiff seeks to hold defendant liable in damages for breach of contract. In her second cause of action she seeks to charge defendant with damages for injuries which she claims she sustained by reason of defendant's sale of her photograph in alleged violation of section 50 of the Civil Rights Law of this State.

As to plaintiff's first cause of action, the complaint fails to allege any facts showing any privity of contract between plaintiff and defendant. In this connection plaintiff very disingenuously alleges that the defendant " *was employed* " to take pictures and " *was paid* " the agreed price therefor. Plaintiff very carefully avoids alleging by whom defendant was employed or by whom paid. The complaint fails to allege any contract of employment of defendant by plaintiff. While the complaint is silent as to the parties to the contract, the brief of the plaintiff, appellant, states that the defendant was employed by plaintiff's mother-in-law to take the pictures of guests at a social function at plaintiff's house. It thus appears that the plaintiff's mother-in-law was the contracting party who employed and paid defendant. But the mother-in-law is not suing. The only contract relationship between plaintiff and defendant alleged in the complaint was that an agreement was made between plaintiff and her husband and defendant's agent that if plaintiff wished to purchase any of the pictures taken by defendant she might do so after inspection of the proofs. The complaint does not allege any denial of plaintiff's privilege in this respect. Appellant's chief reliance seems to be upon the decision of this court in *White Studio, Inc.*, v. *Dreyfoos* (156 App. Div. 762). I think that case is so clearly distinguished from the case at bar as to furnish no support whatever to the plaintiff. While it is true that this court held in the *White Studio* case that a contract between a photographer and his customer was a contract of employment, and that the customer is the exclusive owner of all proprietary rights, such holding was in a case where there was no question of privity of contract, because there the " sitter " was the employer. The sitter personally employed the photographer. Moreover, plaintiff here in her first cause of action fails to allege that by reason of the delivery by defendant to the newspaper of a copy of plaintiff's photograph plaintiff has suffered any damage. I am of the opinion, therefore, that by omitting to allege in her first cause of action any privity of contract with defendant, without alleging the payment of any consideration or that she has suffered any damage from defendant's alleged breach of contract, the plaintiff has failed to allege facts sufficient to constitute a cause of action.

Plaintiff's second cause of action is based upon an alleged

violation of the Civil Rights Law, and, likewise, in my opinion, therein the plaintiff fails to allege facts sufficient to constitute a cause of action. Section 50 of the Civil Rights Law provides that a person, firm or corporation that " uses for advertising purposes, or for the purposes of trade," a portrait or picture of a living person, without having first obtained the written consent of such person, shall be guilty of a misdemeanor. Section 51 of the same law (as amd. by Laws of 1921, chap. 501) furnishes to a person whose portrait has been used within this State for advertising purposes or for the purposes of trade without the consent of such person, equitable relief by way of injunction to restrain such use, and also relief through an action at law to recover damages sustained by reason of such use, and where the defendant has knowingly used such person's portrait or picture the plaintiff may recover of defendant exemplary damages. The Civil Rights Law was clearly aimed against the unauthorized *use* of a portrait for advertising purposes or for the purposes of trade. As I read the complaint no such use of plaintiff's portrait by defendant is alleged. Indeed, the complaint fails to state facts showing the defendant even used the portrait. It is therein alleged that the defendant, without plaintiff's consent, used plaintiff's picture for the purposes of trade in that the defendant sold said picture to a newspaper for publication therein. There is no allegation of facts showing a prohibited use, but only the bare conclusion of the pleader, and the alleged use was not by the defendant, but by the newspaper. The violation of the right of privacy which the statute sought to prevent was the unauthorized use of a picture for advertising purposes or for the purposes of trade. In *Roberson* v. *Rochester Folding Box Co.* (171 N. Y. 538) the plaintiff, a young woman, sought to restrain the defendant from using her lithograph portrait in advertising a brand of flour, and in other cases where the statute has been found applicable, the facts involved the unauthorized use of a living person's portrait in advertising matter and involving trade, such as the advertising of foods, medicines, toilet articles and the like. Such unauthorized use was clearly in violation of the present statute, but here the plaintiff alleges no such use. The pleader's conclusion that the defendant *used* the plaintiff's portrait for the purposes of trade is overcome by the later allegation in plaintiff's complaint that the picture was published in a newspaper " in connection with a false, scandalous and defamatory *news article* of and concerning the plaintiff." It thus appears from the complaint that the portrait was used, not for advertising or trade purposes, but in connection with a *news* article. Such use the statute does not prohibit. The courts have repeatedly held that the use of a photograph without the consent

of the sitter for news purposes is not in violation of the Civil Rights Law. (*Humiston* v. *Universal Film Mfg. Co.*, 189 App. Div. 467; *Colyer* v. *Fox Publishing Co.*, 162 id. 297.) The mere fact that the defendant received a consideration from the news publisher for the portrait in no sense constitutes the defendant a user for advertising or trade purposes within the statute. At least, so far as I know, the courts have not so held. Surely the newspaper would have had the right to photograph plaintiff and use her portrait in news articles. If so, why not purchase from another photographer a portrait to be published in connection with a news article? The mere fact that the defendant received a consideration for furnishing plaintiff's photograph for a perfectly proper purpose does not, I think, constitute such sale a use for trade or advertising under the statute. The statute is in derogation of the common law and must be strictly construed. Its enactment followed immediately after and was undoubtedly designed to meet the decision of the Court of Appeals in *Roberson* v. *Rochester Folding Box Co.* (*supra*), wherein that court held that the law did not provide for the so-called right of privacy. In the course of his opinion in that case Chief Judge PARKER, while holding that the so-called right of privacy had no place in our jurisprudence, stated (p. 545) that " The legislative body could very well interfere and arbitrarily provide that no one should be permitted for his own selfish purpose to use the portrait or the name of another for advertising purposes without his consent." The Legislature at once adopted the suggestion of the Court of Appeals and enacted the existing Civil Rights Law. Thereby the Legislature clearly intended to prohibit the unauthorized use of one's portrait for advertising purposes and to provide remedies against the wrongdoer to the person whose portrait was thus used. Not only was the statute in derogation of the common law, but it made a violator of its provisions guilty of a crime, and must, therefore, be strictly construed. As was said by this court in *Humiston* v. *Universal Film Mfg. Co.* (189 App. Div. 467, 476): " When the right to an injunction and to damages is based upon an act made criminal by the same statute, the law of strict construction should lead us to interpret the act in favor of the party charged with crime." (See, also, *Binns* v. *Vitagraph Co.*, 210 N. Y. 51, 55; *Fitzgerald* v. *Quann*, 109 id. 441; *Merle* v. *Sociological Research Film Corp.*, 166 App. Div. 376.)

In my opinion, plaintiff's complaint fails to state facts sufficient to constitute a cause of action as to either of the causes of action therein attempted to be alleged.

The order appealed from dismissing the complaint and the

judgment entered thereon should be affirmed, with costs to the respondent against the appellant.

Judgment and order reversed, with costs, and motion denied, with ten dollars costs, with leave to defendant to answer within ten days from service of judgment to be entered hereon upon payment of said costs.